COMMONWEALTH of Pennsylvania,
Appellee,

v.

**Paul S. McLAUGHLIN, Appellant.**

Superior Court of Pennsylvania.

Submitted June 30, 2003.
Filed Oct. 28, 2003.

lant because she was concerned about her boyfriend. The victim asked if she could come to [A]ppellant's house and discuss her problem. The victim went to [A]ppellant's house. When the victim decided to leave, [A]ppellant suggested that she stay the night. The victim declined the offer. Appellant began kissing the victim. The victim protested but [A]ppellant kept kissing her and holding her down. Appellant told the victim to shut up and threatened to hit her. The victim kept protesting and [A]ppellant hit her. Appellant forced the victim to have sexual intercourse. The victim screamed and yelled. Eventually, [A]ppellant's roommate came home and took the victim out of the house.

\* \* \* \*

Appellant, Paul [S.] McLaughlin, was convicted by a jury of rape, simple assault and indecent assault. Post[-]trial motions were filed and denied. Appellant was sentenced to a term of imprisonment of seven and one-half to fifteen years. Appellant did not file a direct appeal. Appellant filed a petition under the Post Conviction Relief Act. 42 Pa. C.S. § 9541 *et seq.* A hearing was conducted and the petition was denied. This appeal followed . . . .

Appellant claims that trial counsel was ineffective in a multitude of instances. *Commonwealth v. McLaughlin (McLaughlin I)*, No. 02218 Philadelphia 1991, 422 Pa.Super. 632, 613 A.2d 1262 (filed June 26, 1992) (unpublished memorandum).

¶ 3 In *McLaughlin I*, this Court found all of Appellant's allegations of trial counsel's ineffectiveness meritless. In particular, claims that trial counsel had failed to object to the admission of the results of a Johnson Rape Kit (testing positive for seminal fluid), and, the Commonwealth's

Paul S. McLaughlin, appellant, pro se.

Mary M. Killinger, Asst. Dist. Atty., Norristown, for Com., appellee.

BEFORE: FORD ELLIOTT, GRACI and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Paul S. McLaughlin appeals *pro se* the order entered January 7, 2003, denying his "Motion for DNA Post Conviction Testing" (hereinafter "motion"). We affirm.

¶ 2 Our review of the record discloses the following account of the events preceding the present appeal; to-wit:

On December 15, 1988, the victim, her boyfriend, and [A]ppellant's nephew went to [A]ppellant's house to drink and do cocaine. During the evening, the group came and went from [A]ppellant's house several times. After a while, the victim's boyfriend took her home. Once the victim was home, she called [A]ppel-

expert's testimony as to the contents of the rape kit were deemed frivolous: The Commonwealth established a sufficient chain of custody to admit the results of the rape kit; and the expert's testimony recounted that the victim had sexual intercourse, but he could not identify with whom.

¶ 4 Appellant could not be excluded from the pool of perpetrators because the victim identified Appellant as her assailant and "[A]ppellant categorically refused to submit to a DNA test." *See McLaughlin I,* *supra* at 5–6; Trial Court opinion, 5/22/91, at 7 ("Based on [Appellant's] denial of sexual intercourse with the victim on the night in question, counsel asked [Appellant] to submit to a DNA test or to have a hair sample examined to rebut any inference the jury might make regarding the semen or pubic hair found in the victim. [Appellant] stated to counsel that he would not submit to any of these tests.").

¶ 5 Ten years after *McLaughlin I,* and fourteen years after the criminal incident, Appellant filed a Motion for DNA testing pursuant to 42 Pa.C.S.A. § 9543.1(a)(2). The trial court denied Appellant's motion predicated upon the following:

11. The instant motion filed by the [Appellant], fourteen years after the criminal incident, before Your Honorable Court requests testing of his semen to compare t[he] evidence which was taken at the time of the crime, specifically referring to the Johnson Rape Kit.

12. The Commonwealth has inquired as to whether there is any physical evidence available in regard to this matter. The Borough of Lansdale Police Department which collected the evidence and National Medical Services in Willow Grove which analyzed the evidence for spermatozoa and acid phosphatese have both informed the Commonwealth that there is no evidence in their possession. There is also no evidence in the possession of the District Attorney of Montgomery County.

13. Trial Counsel ... testified at the May 17, 1991, evidentiary hearing and stated that she explained DNA testing to [Appellant] and asked him to submit to blood or hair samples. She also stated that she would have been permitted to hire an expert. The [Appellant] told trial counsel that he would not submit to any tests.

14. Under 42 Pa.C.S.A. § 9543.1(a)(2): "... the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of trial in a case where a verdict was rendered on or before January 1, 1995[ .]"

15. Even if any evidence were still available, under 42 Pa.C.S.A. § 9543.1(c)(3)(i), the identity of the [Appellant] was not at issue in the proceedings that resulted in the [Appellant's] conviction and sentencing. (See. N.T. October 3, 1989 at 41–123). The defendant knew the victim. In fact at trial, McLaughlin denied that he raped her on the date of the incident, but, stated he had sexual intercourse with her a few weeks before. In reference to that alleged encounter, McLaughlin said, "Well, its like I know she like the cocaine, you know, and I was supplying the cocaine. I mean it just goes with the territory, so to speak." At the time of the offense, McLaughlin was 42 years old and the victim was 18 years old.

16. After review of the record of McLaughlin's trial the court has determined there is no reasonable possibility that testing if possible would produce exculpatory evidence that would establish McLaughlin's innocence.

17. For these reasons, [Appellant's motion was] ... denied.

Trial Court opinion, 2/27/03, at 2–4. Thereafter, this appeal ensued challenging the trial court's denial of Appellant's motion: (1) without first appointing counsel; (2) without determining whether the Johnson Rape Kit was "destroyed, lost or withheld" by the authorities; and (2) without conducting an evidentiary hearing as to the "location of evidence[.]" Appellant's brief, at 6.

¶ 6 Before addressing Appellant's complaints, we observe the present appeal is not from an order denying Appellant's Post Conviction Relief Act (PCRA) petition.[1] Rather, the appeal is from an order denying Appellant's "Motion for DNA Post Conviction Testing." *See* "Docket Entries" (dated February 3, 2003) at 3 ("The Order Entered 1–07–2003 denies the Motion for DNA Post Conviction Testing."); Trial Court opinion, 2/27/03, at 2 (Paragraph 11); "Docket Information," Nos. 94 ("ORDER ... ON PRO SE MOT FOR DNA POST CONVICTION TESTING ...."); 95 ("MOTION FOR DNA POST CONVICTION TESTING (PRO SE)[.]"); 96 ("ANSWER BY COMNWLTH TO DEFT'S MOT FOR DNA POST CONVICTION TESTING/FORENSIC RESULTS") and 97 ("ORDER OF 01/07/2003 MOT FOR DNA POST CONVICTION TESTING IS DENIED ...."); *see also* Commonwealth's brief, at 6 ("On November 27, 2002, the [A]ppellant filed a *pro se* Motion for DNA Post Conviction Testing/Forensic Results § 9543.1 and asked the trial court to order DNA testing in pursuit of further post-collateral relief.

[...] On January 7, 2003, the trial court denied the [A]ppellant's Motion for DNA Post Conviction Testing/Forensic Results 42 Pa.C.S.A. § 9543.1.").

¶ 7 Appellant's motion for DNA testing (filed in advance of utilizing the PCRA as a vehicle to obtain DNA results) avoids the one year time bar of 42 Pa.C.S.A. § 9545. *Cf. Commonwealth v. Weeks,* 2003 Pa.Super. 320, 831 A.2d 1194, 1996 (2003) ("Post conviction DNA testing does not directly create an exception to § 9545's one-year time bar. *See* 42 Pa.C.S.A. § 9543.1. Rather it allows for a convicted individual to first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa. C.S.A. § 9545(b)(2). *See* 42 Pa.C.S.A. § 9543.1(f)(1). Appellant has not done this. He has filed a PCRA petition instead of making a motion for DNA testing. The petition is therefore untimely ....").

¶ 8 In contrast to *Weeks,* we find the present case to be properly before us for review. In affirming the order appealed, we adopt the remarks of the trial court cited *supra* as our own, and we add to those comments the following observations; to-wit: (1) Appellant's refusal to submit to DNA testing at the time of trial renders the present issue of DNA testing, and the concomitant claim of trial court error in the failing to appoint counsel to assist him in securing DNA testing, waived. *See Commonwealth v. Wallace,* 555 Pa. 397, 724 A.2d 916 (1999); and (2) evidence of the victim's rape kit no longer exists,[2] which determination renders aca-

---

1. If such were the case, the issue of the timeliness of the PCRA petition would come into question and, more probable than not, under the present facts would result in an affirmance of the order appealed *via* the PCRA route as untimely. *See Commonwealth v. Baker,* 828 A.2d 1146 (Pa.Super.2003).

2. There is no proof that the Johnson Rape Kit was destroyed by the prosecutor or the laboratory performing the testing for the purpose of prejudicing Appellant. The lapse of fourteen years (between the criminal incident and Appellant's sudden acquiescence to submit to DNA testing) may account for the Common-

demic the present willingness of Appellant to submit to a DNA test because there would be nothing against which Appellant's spermatozoa and acid phosphatese could be compared.

¶ 9 Order affirmed.

wealth's failure to retain the rape kit, especially after Appellant had filed a PCRA petition raising a DNA issue, the denial of which was affirmed by this Court because Appellant "categorically refused to submit to a DNA test." *See McLaughlin I, supra* 5–6. In any event, the victim's account of the assault and identification of Appellant as the perpetrator was believed by the trier-of-fact and credibili-ty-assessor whose bailiwick we will not invade on appeal. *Cf. Commonwealth v. Cromartie,* 222 Pa.Super. 278, 294 A.2d 762 (1972) (Commonwealth's inability to produce envelope containing lottery and number slips may have weakened its case against the defendant, but remaining evidence sufficient to withstand demurrer).